## TABITHA DAWDY

### v.

### HANNAH NELSON.

1.  STATEMENT.—Appellee, when fourteen years old, came to this country. At the solicitation of her brother, who was working for D., she went to D.'s house.  Here she made her home and was considered and treated as one of the family.  For six years she neither demanded nor received any wages. She brings this action against appellant, D.'s wife, for services rendered to D. before his death, and to appellant after his death.  It is alleged that appellant promised, in consideration of appellee's remaining and working for her, that she would pay for the services rendered thereafter, and for the former services to D.

2.  EVIDENCE—CONTRACT.—As to the right of recovery for her former services, based upon an alleged indebtedness of D. to her, it is incumbent upon appellee to establish by proof that some amount was due her from D. before the promise of appellant will be of any avail.  Considering the circumstances of the case and the evidence of appellee, the court is of opinion that if any agreement at all was made by D. with appellee's brother, it was that appellee's support should pay for her services.  Such an agreement, being a fair and reasonable one in its inception, appellee would be bound thereby, so long as she remained in the family without any change in her relations.

3.  STATUTE OF LIMITATIONS.—The Statute of Limitations begins to run from the time the cause of action accrues, and is not suspended during all the time that the debt may be said to be due, unless a promise within five years or some other fact is shown which arrests the running of the statute.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.  Opinion filed December 28, 1882.

Messrs. McKENZIE & CALKINS, for appellant; as to the man-

Dawdy v. Nelson.

ner of pleading the Statute of Frauds, cited Gould's Pleadings, 307; Ruggles v. Gatton, 50 Ill. 414; 1 Chitty on Pleadings, 421; 1 Wilson, 305; 1 Moore & P. 294; Thornton v. Henry, 2 Scam. 220; Lear v. Choteau, 25 Ill. 40.

The defense of the Statute of Frauds can not be first made by an instruction: Warren v. Dickson, 27 Ill. 115.

In bill for specific performance, a party must set up the Statute of Frauds, if he relies upon it: Hull v. Peer, 27 Ill. 312.

In chancery, Statute of Frauds must be raised by answer or plea: Boston v. Nichols, 47 Ill. 352; Chicago Dock Co. v. Kinzie, 49 Ill. 289.

A promise to pay or answer for the debt of another, must be in writing and supported by a sufficient consideration: Frame v. August, 88 Ill. 424; Eddy v. Roberts, 17 Ill. 505; Scott v. Thomas, 1 Scam. 58; Owen v. Stevens, 78 Ill. 463; Hite v. Wells, 17 Ill. 88; Wilson v. Bevans, 58 Ill. 232.

If the credit is primarily given and is authorized to be given to the promisor, it is a promise to pay his own debt and is not within the Statute: Williams v. Corbett, 28 Ill. 263; Gallup v. Smith, 24 Ill. 586; Hughes v. Atkins, 41 Ill. 213; Runde v. Runde, 59 Ill. 98.

As to admitting improper evidence: Howe Machine Co. v. Rosine, 87 Ill. 105.

Mr. F. S. MURPHY, for appellee; that the filing of a plea of set-off by appellant admits that there was a contract, cited Schwarz v. Schwarz, 26 Ill. 81; Miller v. Miller, 16 Ill. 296.

Whenever the object of the promisor is not to answer for another, but to subserve some purpose of his own, his promise is not within the Statute: 3 Pars. on Contracts, 24; Nelson v. Boynton, 3 Met. 396; Alger v. Scoville, 1 Gray, 391; Clifford v. Luhring, 69 Ill. 401.

PILLSBURY, P. J. It appears from the record in this case that in the spring of 1869, when the appellee was but fourteen years old, she came from Sweden and went to the home of John Dawdy, the husband of the appellant, where she remained until his death, in February, 1875.

After his death she still remained with appellant until November, 1879. At the time she came to this country her brother was at work for Mr. Dawdy, and she went there at his solicitation under some arrangement he had made with his employer. On the 20th of November, 1880, she commenced this action against the appellant, claiming to recover from her for services rendered both to John Dawdy before his death, and for the appellant after his death.

As to the services alleged to have been performed for Mr. Dawdy in his life-time, the declaration alleges in substance, that at the time of his death he was indebted to the appellee for such work and labor, and that the said defendant surviving him as his widow after his death, and in consideration that the appellee, at the request of appellant, would continue to remain with the appellant and render services for her as a house servant, that the appellant promised to pay for the services thereafter to be rendered and also the indebtedness of John Dawdy to her, and that relying on the promise of the appellant to so pay her, she remained with the appellant and worked for her for a space of four years, and that although the estate of the said John Dawdy was solvent and duly administered upon, she in consequence of said promise, did not present any claim against the said estate for the services so rendered, and that now she is barred by the lapse of time from enforcing any claim against the estate.

With a special count alleging the above facts, the appellee filed the common counts against the defendant for work and labor.

The court sustained a demurrer to a plea of the Statute of Frauds, interposed as a bar to a recovery for the alleged indebtedness of Mr. Dawdy, and a trial was had upon other issues, resulting in a verdict and judgment for the appellee for $789.30, being for all the services claimed to have been performed, and the defendant below appeals to this court.

The plaintiff claims that after the death of John Dawdy, the defendant at one time promised to pay her for what she had done in the life-time of Mr. Dawdy, and also to pay her for future services.

The right of recovery, so far as her former services were concerned, being based upon an alleged indebtedness from Mr. Dawdy to her for her labor, it was incumbent upon her to establish by proof that some amount was due her from him, otherwise the promise of the defendant, if made, would be of no avail. A careful examination of the evidence contained in this record convinces us that she has failed to sustain her claim in this particular.

Concerning the circumstances under which she went to Mr. Dawdy's in 1869, she says in her testimony: "I came there under arrangement made by my brother. I was fourteen years old, and not familiar with the English language. I spoke English very well in six months. I had no experience in housekeeping when I went to defendant's. I learned that after I went there. I helped to do general housework."

On cross-examination she says: "Up to the time of Mr. Dawdy's death I never had any conversation with defendant about paying me wages. I never told her I would work for $2.50 a week. Before his death I never demanded wages nor ever notified her I should expect wages. I came there and remained until his death without mentioning wages. Before his death nothing was ever said on the question of pay. Prior to his death I got clothing and support."

The defendant testified that the plaintiff had her home there and was treated as one of the family; that no account was ever made of any purchase made for her; whatever she needed was bought for her the same as for their own daughters, and that was the end of the matter.

There is no direct testimony in the record going to show what arrangement her brother made with Mr. Dawdy, further than that he obtained permission for her to come there, but the fair inference to be drawn from the circumstances surrounding the parties at the time and their subsequent conduct to each other is that her brother made no contract for wages for his sister with Mr. Dawdy, but rather that she could make it her home, rendering such services as she could for support in his family.

It would seem that if she was to have wages she would have been informed of it by her brother or Mr. Dawdy, and that she would have made some request for her pay at some time during the six years she remained there before the death of Mr. Dawdy. She says she makes no charge for the first six months she was there, but gives no reason why she is not entitled to it if she was hired for services. It would seem from her own statements on the witness stand that she well understood that she was not there in the capacity of a hired servant, with a right to wages above her support. For over six years not a word is said about pay, she neither demanded nor received wages, but remained there, making it her home, and was considered and treated as a member of the family.

When she came to this country she was but a mere child, unacquainted with the language and customs of the people, and without relatives or friends except her brother, who was at work for Mr. Dawdy, and what more natural than for her brother, desiring to procure a home for his sister where he could watch over and protect her, to make an arrangement with Mr. Dawdy to take her with his own family, there to remain, rendering such services for her support until she saw an opportunity of bettering her condition by obtaining employment elsewhere. We have no doubt if her brother made any arrangements with Mr. Dawdy, as appears he did, it was of the character indicated, and being under the circumstances, a fair and reasonable one for her support, she would be bound by it so long as she remained there without any change in the relations she sustained to him or his family.

She was not obliged to remain any longer than she desired, but so long as she received its benefits without complaint, it being fair and reasonable in its inception, she should be held to its terms.

The conclusions to which we have arrived upon this branch of the plaintiff's claim, render it unnecessary to inquire whether the promise alleged in the declaration was void because not in writing. We might say, however, that the promise testified to by the plaintiff would seem to be merely a collateral one, and therefore not supporting the declaration as an

Dawdy v. Nelson.

original promise founded upon a consideration having for its primary object the benefit of the promisor.

The declaration may bring the case within the rule announced in Clifford v. Luhring, 69 Ill. 401, but the proof of the promise fails to take it out of the Statute.

As we have said, so long as the plaintiff lived at the home of Mr. Dawdy, as a member of the family, she should not recover wages, but she claims that after Mr. Dawdy's death, Mrs. Dawdy, the defendant, promised to pay her for her services if she would remain with her. This promise is denied by the defendant, and without entering into any detailed statement of the testimony, we will say that it was a question for the jury to determine whether any such promise was in fact made.

If a new arrangement was made after the death of Mr. Dawdy by which the plaintiff was to receive wages, she ought, of course, to recover the amount, less any sum that has been paid her, or she has received to apply thereon, unless she is otherwise barred. The defendant testifying that the plaintiff was considered as a member of the family, was required over objection to answer on cross-examination why the plaintiff had not been adopted, so that when her husband died she would have a share of the property?

Complaint is made of this action of the court. By the seventh instruction given for defendant, the jury were told to disregard such evidence, and under such circumstances we do not think the error could be very prejudicial to the defendant. Upon another trial, if the question should be again asked, we think the court should sustain the objection.

No error is perceived in the action of the court rejecting evidence sought to be introduced by the defendant tending to show the expenses of the plaintiff since she left the defendant. Such testimony would not tend to prove what she received while at the defendant's, which was the only purpose of its attempted introduction.

The third instruction given for the plaintiff is as follows:

"The jury are instructed that, if they believe from the evidence, that the plaintiff, at the instance of the defendant,

worked for her as a house servant, from the time of her husband's death, in February, 1875, until about the 12th day of November, 1879, and that she did during such time do and perform the work ordinarily done by hired help for like service, then the jury are instructed the plaintiff is entitled to recover whatever her services for such work and labor are reasonably worth, as shown by the evidence, less any payment made the plaintiff during that time, or money or other property received by her from the defendant, and the jury, on this particular cause of action, will find for the plaintiff, if they find the claim of plaintiff, if any, accrued to her, and was due at any time within five years next before the commencement of this suit."

The plaintiff claims a right to recover for services rendered for the defendant from February, 1875, until November, 1879. The suit was commenced Nov. 20, 1880. Now, it is evident that for all services rendered prior to February, 1880, she would be barred by the Statute of Limitations unless brought by the proof within some exception to the Statute.

This instruction allows a recovery for all her claims that were due at any time within five years before the commencement of the suit.

The Statute commences to run from the time the cause of action accrues, and is not suspended during all the time that the debt may be said to be due. She can in no event recover for services rendered more than five years before the commencement of the suit unless she can take such part of the claim out of the statute by showing a promise within the five years, or some other fact that arrests the running of the Statute.

The instruction does not, however, proceed upon any theory that the case is excepted from the Statute. Objections are also made to some of the other instructions, but what we have said in the former part of this opinion obviates the necessity of noticing them in detail.

The judgment will be reversed and cause remanded.

Judgment reversed.